STATE OF NEW YORK
SUPREME COURT   COUNTY OF SCHENECTADY

---

ILEEN VARNO,

                              Plaintiff,

      -against-

COUNTY OF SCHENECTADY, MICHAEL GERACI,
DOMINIC DAGOSTINO, JAMES BARRETT,

                              Defendants.

COMPLAINT

Index No.: 2022-2

---

Plaintiff, Ileen Varno, by and through her attorneys, as and for her Complaint against defendants, alleges:

1. At all times hereinafter mentioned, the plaintiff, Ileen Varno, was and still is a resident of the County of Schenectady, State of New York.

2. At all times hereinafter mentioned, the defendant, County of Schenectady, was and is a municipal corporation and County as defined under New York Law and has its principal place of business located at 620 State St, Schenectady, NY 12305.

3. Upon information and belief, at all times hereinafter mentioned, the defendant Michael Geraci was and still is a resident of the County of Albany, State of New York.

4. Upon information and belief, at all times hereinafter mentioned, the defendant Dominic Dagostino was and still is a resident of the County of Schenectady, State of New York.

5. Upon information and belief, at all times hereinafter mentioned, the defendant James Barrett was and still is a resident of the County of Schenectady, State of New York.

6. Prior to her wrongful termination, plaintiff was employed as the supervisor and head of the Civil Division within the Schenectady County Office of the Sheriff.

7. At the time of plaintiff's termination, defendant Michael Geraci was the Patrol Lieutenant of the Schenectady County Office of the Sheriff.

8. At the time of plaintiff's termination, defendant Dominic Dagostino was the Sheriff of the Schenectady County Office of the Sheriff.

9. At the time of plaintiff's termination, defendant James Barrett was the Undersheriff of the Schenectady County Office of the Sheriff.

10. The nature of this action is:

- Violation of civil rights, gender discrimination, workplace violence and retaliation under the New York State Human Rights Law and PESH laws

- Aiding and abetting civil rights violations

- Wrongful discharge

- Constructive discharge

- Hostile work environment

- Sexual harassment

- Violation of rights related to need to take time off due to a COVID exposure

- Violation of rights and retaliation related to need to obtain help from EAP for counseling and suffering caused by toxic workplace

- Breach of Contract: employer failed to follow requirements of collective bargaining agreement and policies/protocols for progressive discipline and provisions related to termination

11. More specifically, this action seeks to hold defendants responsible for their discrimination, harassment, and wrongful termination of plaintiff from employment after she took protected medical leave; after she reported gender discrimination, bullying and harassment; and, after she sought out assistance from EAP to deal with the discrimination and the hostile work environment fostered, created and condoned by defendants.

12. The work environment at the Schenectady County Office of the Sheriff has long been a "boy's club" in which insults toward women and disrespect toward women is the norm.

13. Simply stated: the "men" handle the "police work" while the women are expected to do the paperwork and handle the secretarial work.

14. As another example, women are routinely referred to as "bitches" or "cunts" by the male supervisors and named defendants in this case.

15. Specifically, for example, the former county manager was referred to by the Sheriff and Undersheriff as "the cunt on the sixth floor" or many times just "the cunt." This was routine and common practice. Meanwhile, the current County Manager (since April 2019) is called "Rory" since he is a man, and, his name is Rory. It is noteworthy, however, that the female Deputy County Manager is often referred to as "the bitch" or "bitch" by the Sheriff, Undersheriff and defendant Geraci.

16. As another example, the Sheriff for several years, and at all points in time up until plaintiff was terminated, referred to plaintiff as "honey" or "darling" or other similar names, and, with frequency and regularity he would request that plaintiff rub his back, rub his shoulders or neck, or massage his head. Plaintiff felt obligated to give in to these demands even though it made her uncomfortable. Plaintiff has never seen or heard of the Sheriff asking any men that work for him to engage in this behavior.

17. At the time of plaintiff's termination there was just one female patrol deputy and one female investigator. Women were not given a chance in the department to become supervisors compared to men.

18. Even though the work environment was discriminatory and unfair with regard to the treatment toward women, plaintiff worked dutifully in her job for nearly 20 years and was a stellar employee with an excellent track record: no write ups; no discipline; nothing but positive reviews and promotions.

19. The Civil Division had flourished under her guidance and supervision: even though the office was mostly involved with paperwork and therefore was staffed mostly with women, the office ran smoothly for many years until defendant Geraci became involved with the Civil Division.

20. Defendant Geraci did not like to be challenged by women, including but not limited to plaintiff.

21. Even though it was in the job description of Patrol Officers, defendant Geraci and Undersheriff Barrett wanted the staff in the Civil Division to enter information for process serving and other tasks. Both Geraci and Barrett referred to the work as

"woman's work" and stated that it should be done by plaintiff and her female staff.

22. When plaintiff complained about this language and discrimination toward her and her staff she was ignored.

23. Further, after she complained about changes in the work and discriminatory remarks, she had job duties taken away, had her hours changed, and was constantly intimidated by defendant Geraci and the Undersheriff.

24. When she further protested she had her title as supervisor and head of the Civil division taken away.

25. At the same time these issues arose and discrimination and retaliation became more evident, plaintiff happened to be placed in Quarantine by the Schenectady County Public Health Director due to the Covid-19 pandemic. The Quarantine Order required plaintiff to stay home from April 7, 2021.

26. Despite this Order, plaintiff was criticized for calling out of work and was told by Undersheriff Barrett to return to work since she was vaccinated.

27. Plaintiff protested and repeated that she had informed the Health Department of her vaccination status and yet she still had an Order stating that she was to stay home. Plaintiff stated she just wanted to be safe.

28. On or about April 13, 2021 plaintiff discussed the hostile work environment, discrimination, and bullying with her union leadership.

29. On April 14, 2021, plaintiff requested FMLA paperwork to deal with the harassment and hostile work environment.

30. Plaintiff also began treatment through EAP on April 14, 2021 to deal with workplace hostile work environment.

31. Plaintiff continued to be harassed and asked to return to work during her Covid quarantine. Due to the stress she requested and was approved for medical leave due to the stress.

32. On April 19, 2021 defendant Geraci went into the Civil Division and announced to the workforce that plaintiff no longer worked there. Defendant Geraci proceeded to dismantle plaintiff's desk and packed up her belongings and personal items. It is noteworthy that, at this time plaintiff was still treating with her EAP counselor and had been on medical leave for workplace stress and hostile work environment.

33. Plaintiff was a member of a union and her collective bargaining agreement required progressive discipline to terminate her for cause.

34. Despite these supposed protections, on April 20, 2021 plaintiff was informed that her position was abolished by the Sheriff.

35. The Sheriff does not have the authority to abolish a position. Subsequently, at the May 11, 2021 meeting of the Schenectady County Legislature, plaintiff's position was abolished by formal resolution while plaintiff was still out on medical leave and receiving treatment for workplace discrimination and stress. (Resolution 53-21 available online).

36. Plaintiff filed a workplace violence complaint and, while making that complaint, specifically stated that she was the victim of gender discrimination retaliation and bullying.

37. On May 13, 2021 plaintiff asked the County to supplement the complaint after the Undersheriff told the County Attorney that Deputy County Manager was only siding with her "because I have a vagina".

38. Plaintiff and her union repeatedly followed up regarding the workplace violence complaint but were ignored.

39. Plaintiff did not receive and has never received any charges in writing or been given any chance to contest any allegations of alleged misconduct under the collective bargaining agreement. The County has therefore waived any right to demand arbitration.

40. Plaintiff has been stripped of her dignity and discarded without any due process.

41. The individual defendants each possess sufficient authority to affect personnel decisions, and are individually liable for acts of discrimination and retaliation because they conspired against plaintiff; condoned offensive behavior; and actively discriminated and retaliated against plaintiff.

42. Thus, the individual defendants are liable as co-conspirators, as "Employers" and as aiders and abettors. The individual defendants are therefore jointly and individually liable because they directly participated in, conspired, and aided and abetted the discrimination and retaliation against plaintiff.

43. The individual defendants are also liable because they are policymakers for the purpose of implementing the County's unconstitutional and unlawful decisions, policies and customs.

44. Defendant County is vicariously liable for the actions of its agents/supervisors. The County is liable for the actions of the individual defendants because the

County sets policy and makes decisions with regard to the employment of plaintiff and through their actions the County is deemed to have condoned, accepted and approved of the discrimination and retaliation suffered by plaintiff.

45. The County is also liable because the individual defendants (a) were not properly educated or trained concerning discrimination, harassment and retaliation; (b) had inadequate protocols in place for investigating claims of discrimination and retaliation; (c) refused to undertake a prompt and thorough investigation of the claims of discrimination and retaliation; (d) failed to take effective remedial and corrective action; (e) treated plaintiff as though she was the one that did something wrong by making a protected complaint; (f) refused to educate its employees and supervisors about the need to avoid retaliation; (g) refused to apologize to plaintiff or otherwise send a message that discrimination and retaliation would not be tolerated and is unacceptable in the workplace; (h) retaliated against plaintiff; and (i) with regard to defendant Geraci, knowingly hired an individual with a track record of abusing his power and position to violate the rights of others.

## FIRST CAUSE OF ACTION

(NYS Human Rights Law, Schenectady County Law and Covid Protections)

46. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

47. By the acts and practices described above, the defendants have discriminated against plaintiff in the terms and conditions of her employment on the basis of

gender, disability, and Covid protected status under the New York Human Rights Law and Schenectady County Law.

48. Plaintiff has also been subjected to retaliation and wrongful termination for speaking out against the manner in which she was treated in the workplace. Based upon the foregoing, defendants are hereby charged with violation of the New York State Human Rights Law and protections related to protected Covid leave.

49. Plaintiff respectfully requests an award of damages to compensate her for the emotional and physical harm, damage to reputation, loss of enjoyment of life, embarrassment, and humiliation she has suffered and will continue to suffer.

50. Plaintiff respectfully requests an award of damages to compensate her for compensation and benefits she has lost and continues to lose.

51. Plaintiff also requests an award of attorneys' fees, costs and disbursements.

52. Finally, Plaintiff requests an award of punitive damages because the discrimination and harassment outlined above was malicious and/or reckless acts.

## SECOND CAUSE OF ACTION

(Claims under NYS Constitution)

53. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

54. The Equal Protection Clause of both the New York State Constitution protects public employees from various forms of discrimination, including discrimination on the basis of gender, as well as retaliation for complaints about violation of

constitutional rights.

55. By the acts and practices described above, defendants have discriminated against plaintiff in the terms and conditions of her employment on the basis of gender.

56. Defendants acted under color of the law and with a deliberate indifference to the rights of plaintiff.

57. Plaintiff has also been subjected to retaliation and wrongful termination for speaking out against the manner in which she was treated in the workplace.

58. Based upon the foregoing, all defendants are individually and jointly liable for the violation of plaintiff's constitutional rights.

59. Plaintiff respectfully requests an award of damages to compensate her for the emotional and physical harm, damage to reputation, loss of enjoyment of life, embarrassment, and humiliation she has suffered and will continue to suffer.

60. Plaintiff respectfully requests an award of damages to compensate her for compensation and benefits she has lost and continues to lose.

61. Plaintiff also requests an award of attorneys' fees, costs and disbursements.

62. Finally, Plaintiff requests an award of punitive damages because the discrimination and harassment outlined above was malicious and/or reckless acts.

### THIRD CAUSE OF ACTION

(Breach of Contract)

63. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

64. As set forth above, plaintiff is supposedly protected under a collective bargaining agreement in which she can only be removed for cause.

65. Plaintiff was not given notice of alleged misconduct or wrongdoing or an opportunity to be heard under the contract.

66. Defendant breached the contract and therefore has waived any right to enforce its rights including but not limited to demanding arbitration.

67. Defendant breached the contract by firing plaintiff and abolishing her position without just cause and without due process.

68. Plaintiff therefore request money damages in an amount to be decided by a jury; lost wages; economic loss; reinstatement; and, attorneys' fees.

WHEREFORE, Plaintiff demands damages in an amount to be decided by a jury; pain and suffering; lost wages; economic loss; punitive damages; reinstatement; attorneys' fees, together with interest, costs, disbursements, and other equitable relief the Court deems just and proper.

DATED: February 3, 2022

FINN LAW OFFICES

By:_____
    Ryan M. Finn, Esq.
P.O. Box 966
Albany, NY 12201
Ph: 518.928.1152
Cell: 518.210.7902
Fax: 518.677.1155
Ryan@LawFinn.com
www.LawFinn.com

* Physical location:   12 Sheridan Avenue
                       Albany, NY 12207